IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Billy Lee Lisenby, #200273,<br>         Plaintiff,<br><br>v.<br><br>Warden Tim Riley, Assoc. Warden G. Lane, Assoc. Caldwell, Major J. Parish, Captain B. Tucker, Doctor Bearden, Nurse A. Spencer, Dir. William Byars, C/O Bobo, Lt. Copeland, Mrs. Janice Phillips, Warden Celia Reynolds, Assoc. Warden Washington, Assoc. McKay, Major Seward, Captain Dubois, Lt. Huntley, Mrs. Lecompt, Mrs. Powe and Mrs. Hough,<br><br>         Defendants. | C/A No. 5:14-00423-DCN-KDW<br><br><br>Report and Recommendation |

  Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment. ECF No. 103. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on September 29, 2014, advising Plaintiff of the importance of such a motion and of the need for him to file an adequate response. ECF No. 104. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on November 17, 2014, ECF No. 115, to which Defendants replied on December 15, 2014, ECF No. 121. On December 31, 2014, Plaintiff filed a Sur Reply to Defendants' Motion. ECF No. 123. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Background

Plaintiff Billy Lisenby is currently incarcerated at SCDC's Lee Correctional Institution ("LCI"). ECF No. 1 at 2. When Plaintiff first entered SCDC, he was incarcerated at MacDougall Correctional Institution ("MCI") where Plaintiff alleges he informed SCDC staff that he was diagnosed with narcolepsy and suffered from mental health issues. ECF No. 1-1 at 4. Later Plaintiff alleges he was moved to Kershaw Correctional Institution ("KCI"), where he was housed from June 8, 2012 until August 2, 2012. *Id.* In August of 2012, Plaintiff maintains he was transferred to Tyger River Correctional Institution ("TCI").

While at KCI, Plaintiff maintains he was denied recreation and outdoor exercise from June 8, 2012, to August 2, 2012 because he was unable to stand for "all four counts."[2] ECF No. 1-1 at 4. While at TCI, Plaintiff maintains he was denied meals, recreation, showers, and cleaning supplies because officers refused to wake him up. *Id.* at 5. Plaintiff contends that "in order to receive recreation, the only requirement is to stand for (4) counts, [but] Plaintiff is often asleep for these counts and does not hear the call. So just like a man in a wheelchair he cannot stand." *Id.* Furthermore, Plaintiff alleges that his psychiatric medications cause excessive sleeping. *Id.* Plaintiff maintains that medical staff should have put a note on Plaintiff's door so that SCDC officers know he has narcolepsy so that he is not passed over for meals, recreation, showers, and cleaning supplies. *Id.* Plaintiff also alleges that his recreation was taken from him for "not shaving, not cutting [his] fingernails, being under the covers, talking during count, not having [his] jumpsuit button[ed] up, or [his] sideburns being to[o] long." *Id.* Overall, Plaintiff maintains that he "was afforded recreation (3) times in (15) months." *Id.* Plaintiff maintains that

---

[2] KCI and TCI require inmates to stand and be counted at designated announced times throughout the day. *See* ECF No. 103-1 at 2.

he was denied meals for failing to shave when SCDC's policy does not support this practice. *Id.* at 6. Plaintiff alleges that he has lost weight from being denied meals. *Id.* at 7. Plaintiff alleges that he asked medical staff to put a note on his door to alert SCDC officers of his narcolepsy and wake him for meals and count, but his request was denied because staff advised Plaintiff that he did not have narcolepsy. *Id.* Plaintiff maintains that he was denied meals over 15 times since August of 2012. *Id.*

Plaintiff maintains that SCDC staff turned down a nurse practitioner's request that he be placed on Provigil[3] in July of 2008. ECF No. 1-1 at 5. Additionally, he maintains he has reported to medical services for a variety of ailments, and he has received medications to treat constipation and migraines. *Id.* Plaintiff alleges that "Nurse Spencer and Dr. Bearden refused to order Plaintiff's medical records from society to better treat him for his disabilities and mental health issues." *Id.* at 7. Plaintiff contends that Dr. Bearden saw "no indication of narcolepsy" in Plaintiff even though Dr. Ford of SCDC noted Plaintiff's narcolepsy. *Id.*

Plaintiff lists 14 "ways" in which Defendants have violated his Fourteenth and Eighth Amendment rights. *Id.* at 14. Plaintiff seeks a "declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States." *Id.* at 16. Additionally, Plaintiff seeks a preliminary and permanent injunction ordering Defendants to stop retaliating against him for his alleged disability and provide him medical treatment for his alleged disability. *Id.* Plaintiff seeks $75,000 in compensatory damages, $300,000 in punitive damages, a jury trial, costs, and any additional relief the court deems proper. *Id.*

---

[3] Provigil is used to treat excessive sleepiness caused by sleep apnea, narcolepsy, or slight work sleep disorder. *See* www.drugs.com/provigil.html (last visited Mar. 23, 2015).

II.   Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.   Analysis

A. Failure to State a Claim

Defendants maintain that Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief can be granted. ECF No. 103-1 at 6-8. Specifically, Defendants maintain that Plaintiff's allegations fail to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 6.

Rule 8 of the Federal Rules of Civil Procedure requires that complaints shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the plaintiff is obligated to

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly* Court noted that defendants will not know how to respond to conclusory allegations, especially when "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 565 n.10. However, *Twombly* did not expressly hold that a plaintiff must assert specific time, place, and persons involved in order to comply with Rule 8. *See Ashcroft*, 556 U.S. at 678 (internal *Twombly* citation omitted) ("As the Court held in *Twombly,* [] the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (finding the *Twombly* court noted, in dicta, that the pleadings there mentioned no specific time, place, or person involved in the alleged conspiracies and rejected defendants' argument that *Twombly* requires a plaintiff identify the specific time, place, or person related to each conspiracy allegation); *Milliken & Co. v. CNA Holdings, Inc.*, 3:08-CV-578-RV, 2011 WL 3444013, at *5 (W.D.N.C. Aug. 8, 2011) (finding other courts have held a plaintiff can survive a motion to dismiss even though he fails to answer who, what, when and where).

Plaintiff is proceeding pro se in this case. Pro se complaints should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). Dismissal of a pro se complaint for failure to state a valid claim is only appropriate when, after applying this liberal construction, it appears "beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519 (1972). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller*, 901 F.2d at 390-91. Defendants argue Plaintiff's Complaint should be dismissed in its entirety for failure to satisfy Rule 8's pleading requirements. The undersigned will address Plaintiff's purported causes of action in turn.

1. Medical Indifference

The undersigned finds that Plaintiff's allegations of medical indifference fail as a matter of law. In his Complaint, Plaintiff alleges that he was diagnosed with narcolepsy in 2006, and since he entered SCDC staff has tried to get his Provigil but Dr. Wood denied the request. ECF No. 1-1 at 4. Additionally, Plaintiff alleges that he has been to "medical complaining and is being treated for migraines, heartburn, stomach cramps, neck pains, constipation, lethargy, and depression." *Id.* at 5. Plaintiff further maintains that he is receiving medications for his constipation and Imitrex for his migraines. *Id.* Plaintiff alleges that "Nurse Spencer and Doctor Bearden refused to order Plaintiff's medical records from society to better treat him for his disabilities and mental health issues." *Id.* at 7. However, Plaintiff contends that Dr. Bearden saw "no indication for treatment of narcolepsy at present." *Id.* Plaintiff alleges that in a medical note, Dr. Ford of SCDC noted that Plaintiff was prescribed Remeron and Risperdal in October of 2012 "for his intermediate (sic) explosive disorder. These two meds. (sic) cause excessive sleeping." *Id.*

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v.*

*Brennan*, 511 U.S. 825, 846 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference. . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Here, Plaintiff admits to receiving medical treatment on numerous occasions and receiving medications for certain illnesses. However, Plaintiff disagrees with Defendants' assessment of Plaintiff's condition and the course of medical treatment Defendants have prescribed. Plaintiff's disagreement with SCDC medical staff regarding his treatment does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Brissette v. Stepke*, No. 13-1355-BTM-RBB, 2013 WL 4806516, at *2 (S.D. Cal. Sept. 9, 2013) ("Based on the record before the Court, Plaintiff is not receiving Provigil based on the medical opinion of Dr. Finander that Plaintiff does not suffer from narcolepsy. Dr. Finander's medical opinion may be different from that of Dr. Straga or the emergency room doctor. However, a difference of

medical opinion is insufficient to establish deliberate indifference."); *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). As the Fourth Circuit Court of Appeals articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).

The undersigned finds that Plaintiff's Complaint fails to contain facts that, if true, demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Accordingly, the undersigned recommends that Plaintiff's medical indifference claim be dismissed.

2. Conditions of Confinement

To the extent Plaintiff alleges deprivation of showers, cleaning supplies, and food in violation of his constitutional rights, the undersigned recommends dismissing these purported causes of action for failure to comply with Rule 8. Plaintiff only mentioned deprivation of shower and cleaning supplies once in his Complaint, *see* ECF No. 1-1 at 5, and there he fails to provide specific facts to support his allegation. Additionally, Plaintiff's allegations of a constitutional violation for deprivation of food fails as a matter of law.

In his Complaint, Plaintiff maintains that he was denied food a total of 15 times since August of 2012, the date when he was transferred to TCI. *Id.* at 5-6. As a general matter, the Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-103 (internal citation omitted). Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511

U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (internal reference omitted) (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal reference omitted). To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. at 835–37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 F. App'x. 348, 353 (4th Cir. 2012).

Here, Plaintiff maintains that he was denied meals because SCDC officers claimed he failed to follow policies and not because of the officers' deliberate indifference or malice directed toward Plaintiff. Therefore, Plaintiff has failed to allege or show a necessary component for an Eighth Amendment violation. Additionally, Plaintiff's allegation that he was denied food a total of 15 times in the course of 18 months does not rise to the level of a serious deprivation of a basic human need. Further, other than Plaintiff's alleged constipation for which he concedes he is receiving treatment, Plaintiff has failed to allege or offer proof that his health is in danger.

*Cherry v. Platt*, No. 3:10-CV-629-RJC, 2012 WL 868897, at *6 (W.D.N.C. Mar. 13, 2012) ("Plaintiff has failed to show that any alleged deprivation of food resulted in injury to him, or that Defendants acted with deliberate indifference to his constitutional rights."). Accordingly, the undersigned recommends Defendants' Motion be granted as to Plaintiff's claim that he has been deprived of adequate food because it does not rise to the level of a constitutional violation.

### 3. Denial of Recreation/Exercise and Retaliation

Regarding Plaintiff's causes of action for failure to provide outdoor recreation/exercise as well as Plaintiff's cause of action for retaliation, the undersigned finds that Plaintiff's Complaint meets the requirements of Rule 8, Federal Rules of Civil Procedure. Plaintiff explains how his constitutional rights were violated with regard to prison conditions. Specifically, Plaintiff states sufficient facts concerning his alleged deprivations and his allegation of retaliation. Based on the liberal construction requirement for pro se plaintiffs, the undersigned finds that Plaintiff met the Rule 8 requirement for causes of action concerning these prison conditions. Therefore, the undersigned addresses these two causes of action herein without summarily dismissing them for failure to comply with Rule 8.

### B. Plaintiff's Remaining Conditions-of-Confinement Claims

#### 1. Exercise and Recreation

Defendants argue that though under certain circumstances there may be a constitutionally-protected right to exercise, there is no cognizable right to recreation as a matter of law. ECF No. 103-1 at 11-13. Furthermore, Defendants maintain that no medical evidence supports Plaintiff's claim that his health deteriorated due to lack of exercise. *Id.* at 12. Plaintiff responds by asserting that he has never refused recreation and "[m]ost of the time [he] was under the covers [a]sleep." ECF No. 115 at 1. Furthermore, Plaintiff argues that "[i]t is generally

recognized that a total or near total deprivation of exercise or recreational opportunity without penological justification, violates [the] Eighth Amendment." *Id.* at 4. In Reply, Defendants argue that Plaintiff has failed to submit records that demonstrate narcolepsy prevents him from being awakened in the manner utilized by the prison. ECF No. 121 at 2. The undersigned finds that Plaintiff has failed to demonstrate an Eighth Amendment violation and will address Plaintiff's ADA allegation in the following section.

As previously stated, in order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams*, 952 F.2d at 824. The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence that he has sustained "a serious or significant physical or emotional injury as a result of these conditions." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Furthermore, the Fourth Circuit has distinguished exercise from recreation. *Strickler,* 989 F.2d at 1381 n.7 ("We, like the district court, consider whether Strickler was denied exercise. Notably, however, as the district court emphasized, Strickler does not even specifically allege that he was deprived of such a right [but instead claimed he was being denied 'adequate recreation']."). "Lack of exercise may rise to a constitutional violation in certain limited circumstances 'where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened.'" *Thomas v. Ramos,* 130 F.3d 754, 763 (7th Cir. 1997) (quoting *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985)).

Plaintiff's allegations that he was deprived of the opportunity to exercise and has only been allowed to exercise three times in 15 months, *see* ECF No. 1-1 at 4, fail as a matter of law. Plaintiff has failed to allege or demonstrate that Defendants acted with deliberate indifference to

his rights. Rather, Plaintiff concedes that most of the time he was asleep during the time allotted for recreation.[4] Additionally, in support of their Motion for Summary Judgment, Defendants have attached the affidavit of Tim Riley, Warden of TCI. Riley Aff. ¶ 1, ECF No. 103-3. Warden Riley attests that Plaintiff was housed in the Special Management Unit of TCI and was offered recreational activities in the evening and during the day but normally refused these opportunites. *Id.* ¶¶ 2, 7. The Fourth Circuit has held that the restrictive conditions of high security incarceration do not rise to the level of cruel and unusual punishment. *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 471 (4th Cir. 1999) ("These conditions are indeed restrictive, but the restrictive nature of high-security incarceration alone does not constitute cruel and unusual punishment."). The undersigned finds that Plaintiff has failed to offer any evidence of deliberate indifference concerning Plaintiff's denial of out-of-cell exercise nor has Plaintiff demonstrated an extreme deprivation of his rights. Therefore, the undersigned recommends dismissing Plaintiff's conditions of confinement claim for denial of exercise/recreation.

2. Retaliation

Based on the undersigned's recommendation concerning Plaintiff's causes of action for constitutional violations, Plaintiff's purported cause of action for retaliation fails. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25

---

[4] Essentially, Plaintiff maintains that due to his alleged narcolepsy and the side effects he suffers from his medication, SCDC should make special accommodations for him to have recreation. This allegation would arise in the form of a violation of the Americans with Disabilities Act ("ADA") and will be addressed in the following section.

(5th Cir. 1999). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *Am. Civil Liberties Union, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Plaintiff's retaliation cause of action in the context of his conditions-of-confinement claims fails because Plaintiff has failed to demonstrate that he was adversely impacted because of Defendants' alleged retaliatory actions. Rather, the evidence before the court indicates that Plaintiff did not endure a serious deprivation of showers, cleaning supplies, food, exercise or that he endured other conditions-of-confinement violations. Further, Plaintiff has failed to demonstrate he suffered an adverse event because he exercised a constitutionally-protected right. Accordingly, the undersigned recommends granting all Defendants summary judgment on Plaintiff's retaliation claim.

### C.  American with Disabilities Act ("ADA") Claim

Plaintiff asserts that the denial of outdoor and indoor exercise and recreation violates the ADA. ECF No. 1-1 at 12. Defendants argue that, even assuming Plaintiff suffers a serious impairment under the ADA, he has failed to demonstrate that narcolepsy substantially limits one or more of his major life activities. ECF No. 103-1 at 22-26. Furthermore, Defendants maintain that the ADA does not authorize a suit for monetary damages or punitive damages, and only authorizes suits against a public entity rather than individuals. *Id.* at 24-25. Finally, Defendants

argue that Plaintiff's ADA claim is untimely because the incidents complained of are more than 180 days old. *Id.* at 26.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has construed "public entity" to include state correctional institutions. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). A plaintiff may not allege ADA actions against any defendant in his or her individual capacity, because the ADA does not authorize such suits. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, Plaintiff may only bring this claim against individual Defendants in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, any action against individual Defendants in their official capacities and the state and state agencies are barred by sovereign immunity unless Congress has explicitly created an exception. The ADA does, however, create a limited exception to state sovereign immunity. A disabled inmate may sue a state or state institution for ADA violations that also violate the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006). Because the relevant provisions of the Eighth Amendment are made applicable to the states by the Fourteenth Amendment, Plaintiff may only state an ADA claim against Defendants if he has alleged that his Eighth Amendment rights were violated.

Here, Plaintiff has sued several individuals in their individual and official capacities, claiming that his ADA rights were violated by Defendants' denial of recreation or exercise

opportunities. Specifically, Plaintiff maintains that "Defendants acted with deliberate indifference because they knew of his disability through, numerous grievances, request[s] to staff, writ of mandamus, and medical records and *still denied him recreation for 15 months*." ECF No. 1-1 at 11 (emphasis added). Additionally, Plaintiff has alleged that:

> [N]arcolepsy falls under the Americans with Disabilities Act. By [D]efendants denying Plaintiff meals, recreation, treatment such as medication, discrimination (by making him stand for count and not a man in wheelchair) and harassing him violates the ADA Chapter 126 Equal Opportunity for Individuals with Disabilities. To deny outdoor and indoor exercise and recreation due to disability states a claim under ADA.

*Id.* at 12. Plaintiff also alleges that "[t]aking a man's recreation for 15 months, discriminating against him for his disability, and not feeding, is a matter of commend (sic) sense, that he is being violated." *Id.* at 13.

To the extent Plaintiff alleges that Defendants have violated the ADA by failing to provide him with meals, medical treatment, exercise, and recreation, these claims are identical to the Eighth Amendment violations discussed above. The undersigned has already determined that Plaintiff has not established an issue of material fact on his Eighth Amendment deliberate indifference claims. Therefore, the court must also logically conclude that his ADA claims regarding these constitutional deprivations fail as a matter of law. *See Blackburn v. South Carolina*, No. 006-2011-PMD-BM, 2009 WL 632542, at *21 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010).

This leaves only Plaintiff's claim of discrimination under the ADA. *See* ECF No. 1-1 at 12-13. To establish a prima facie case under Title II of the ADA, Plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3)

such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason Univ.,* 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. *See* 42 U.S.C. § 12131(2). A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade Cnty.,* 480 F.3d 1072, 1082 (11th Cir. 2007); *see also Yensey*, 524 U.S. at 210 (finding that prisons provide inmates with recreational activities, medical services, and educational and vocational programs, which benefit prisoners and of which disabled prisoners could be "excluded from participation").

The undersigned finds that Plaintiff was not denied the opportunity to receive services, such as engaging in recreation. To the extent Plaintiff may be claiming that Defendants denied him an adequate opportunity to participate in exercise or recreation opportunities, Plaintiff has failed to show he was treated in this manner because of his purported disability. Essentially, Plaintiff is maintaining that he should still be eligible to participate in exercise without having to stand for count and that his condition is similar to that of a paraplegic. The undersigned disagrees.

In his affidavit presented to the court, Warden Riley avers that four announcements are made over a loudspeaker, notifying inmates that a count is about to occur. ECF No. 103-3 at 1. Additionally, Warden Riley attests that "the officers who conduct count personally walk down the hall and notify the inmates that it is time for count." *Id.* at 1-2. Therefore, Plaintiff receives a total of five warnings that each count is going to happen.

In his Complaint, Plaintiff does not allege that he is physically unable to stand. Rather, he maintains that he "is often asleep for these counts and does not hear the call." ECF No. 1-1 at 5. However, Plaintiff has failed to allege or demonstrate that the current count notification system in place does not reasonably accommodate him or that he is unable to wake up and then stand for count—after four loudspeaker warnings have sounded—based on his alleged disability.

In his Response to Defendants' Motion, Plaintiff maintains that "the officers on SMU at [TCI] do not announce over a loudspeaker that count is about to begin." ECF No. 115 at 1. Furthermore, he maintains that "[i]f a trial was to come about [P]laintiff could and would call several witnesses noting the loudspeaker was never used to call count the entire time he was at [TCI]." *Id.* However, other than his denial, Plaintiff has failed to demonstrate that announcements are not made announcing count, and his denial alone is not enough to withstand summary judgment. *Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989) ("Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.").

The undersigned finds that SCDC should not have to modify the current count notification system in place because it already reasonably accommodates Plaintiff's alleged narcolepsy. Furthermore, the undersigned recommends that Plaintiff's ADA cause of action for discrimination be dismissed because Plaintiff did not demonstrate that Defendants discriminated against him on the basis of his disability. *See Miller v. Hinton*, 288 F. App'x 901, 902-03 (4th Cir. 2008).

### D. Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 103-1 at 13-16. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the

court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

E.  Eleventh Amendment Immunity

Defendants argue that Plaintiff's action "should be dismissed as a matter of law to the extent that they were sued in their official capacity and while acting in their official capacity they are entitled to Eleventh Amendment Immunity." ECF No. 103-1 at 16-18.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants were agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71 ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Georgia*, 546 U.S. at 159 (finding that any ADA action against individual Defendants in their official capacities is barred by sovereign immunity).  A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663.  The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 103, be granted, and that Plaintiff's case against Defendants be dismissed.

IT IS SO RECOMMENDED.

April 2, 2015                                                                                  Kaymani D. West
Florence, South Carolina                                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**